[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 43.]

CITY OF MIDDLETOWN, APPELLEE, *v.* FLINCHUM, APPELLANT.

[Cite as *Middletown v. Flinchum*. 2002-Ohio-1625.]

*Criminal law—Search and seizure—When officers, having identified themselves, are in hot pursuit of a suspect who flees to a house to avoid arrest, police may enter without a warrant, regardless of whether offense for which suspect is being arrested is a misdemeanor.*

———————————

SYLLABUS OF THE COURT

When officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor.

(No. 01-233—Submitted November 28, 2001—Decided April 10, 2002.)

CERTIFIED by the Court of Appeals for Butler County, No. CA99-11-193.

———————————

ALICE ROBIE RESNICK, J.

{¶ 1} The facts of this case are not in dispute. On April 23, 1999, Middletown police officers observed appellant Thomas Flinchum's car stopped at a red traffic light. When the light changed, appellant spun the car's tires. The officers then observed appellant stopping his car and then rapidly accelerating, causing the car to fishtail as it made a right turn. At this point, the officers decided to follow appellant. The officers attempted to approach appellant's vehicle twice, but on both attempts, appellant fled from the police.

{¶ 2} Finally, the officers observed appellant standing on the driver's side of his parked car. When appellant observed the officers stop their cruiser in front of his car, he ran towards the rear entrance of a house. One of the officers, Officer

Wayne Birch, pursued appellant, yelling "Stop" and "Police" several times, to no avail. As the pursuit continued, Officer Birch heard a rear screen door slam open on a house that was later determined to be appellant's. The officer then observed appellant standing in his kitchen approximately five feet inside his home. Without appellant's permission, Officer Birch entered the home and arrested him. Appellant was charged under Middletown ordinances with reckless operation, DUI, and resisting arrest.

{¶ 3} Before trial, appellant filed a motion to suppress evidence obtained as a result of the warrantless entry into his home at the time of arrest. The trial court denied the motion, finding that the officer was in hot pursuit of appellant, thereby making the entry permissible. Appellant was ultimately convicted of reckless operation and DUI but acquitted on the charge of resisting arrest. The appellate court affirmed the trial court's judgment.

{¶ 4} This cause is now before the court as a certified conflict from the Court of Appeals for Butler County.

{¶ 5} We are asked to consider whether the Fourth Amendment to the United States Constitution is contravened by a warrantless home entry to effect an arrest for a misdemeanor. We hold today that it is not and, therefore, affirm the judgment of the court of appeals.

{¶ 6} The Fourth Amendment states, "The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." Furthermore, in *United States v. United States Dist. Court for the E. Dist. of Michigan* (1972) 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764, the court noted that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."

{¶ 7} Appellant contends that the Middletown police officers were precluded from entering his home because probable cause and exigent

circumstances were absent, since the violation was simply a misdemeanor. We find, however, that appellant's argument is without merit and, if adopted, would create the illusion that flight from police officers is justified and reasonable as long as no felony offense has been committed.

{¶ 8} In *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, the court made it clear that a suspect may not avoid arrest simply by outrunning pursuing officers and finding refuge in her home. The court noted that hot pursuit "need not be an extended hue and cry 'in and about [the] public streets.' " *Id*. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 305, quoting the trial court. Moreover, the court went on to conclude that "a suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place." *Id*. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 306.

{¶ 9} In the case at bar, the officers observed appellant engage in the reckless operation of his vehicle on more than one occasion. Once the officers attempted to approach appellant to arrest him, he not only ignored their commands to stop after they had identified themselves as police officers, but he also fled to his home in order to avoid arrest. Although *Santana* deals with the issue of warrantless home arrests in the context of a felony suspect, we see no reason to differentiate appellant's offense and give him a free pass merely because he was not charged with a more serious crime. The basic fact remains that appellant fled from police who were in lawful pursuit of him and who had identified themselves as police officers.

{¶ 10} Similar conclusions have already been reached in other jurisdictions. In *Nebraska v. Penas* (1978), 200 Neb. 387, 263 N.W.2d 835, paragraph two of the syllabus, in which the defendant was convicted of DUI, the court held, "When a citizen has knowingly placed himself in a public place, and valid police action is commenced in that public place, the citizen cannot thwart police action by fleeing into a private place." Further, in *Minnesota v. Paul* (Minn.1996), 548 N.W.2d 260,

syllabus, that court held, "A police officer in hot pursuit of a person suspected of the serious offense of driving under the influence of alcohol may make a warrantless entry into the suspect's home in order to effectuate an arrest."

{¶ 11} We therefore hold today that when officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor. In so holding, we do not give law enforcement unbridled authority to enter a suspect's residence at whim or with a blatant disregard for the constraints of the Fourth Amendment, but rather limited to situations present in today's case.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and COOK, JJ., concur in judgment.

PFEIFER, J., dissents.

————————————

**PFEIFER, J., dissenting.**

{¶ 12} Our inquiry in this type of case should not be how to effectuate the conviction of someone who did wrong. Instead, we should ask ourselves how what we decide affects our core freedoms. Our Bill of Rights contains a mere ten ideas. Any time we chip away at one of those ten we had better have a good reason. We do not have one in this case.

{¶ 13} The United States Supreme Court thought it had a good reason to limit Fourth Amendment freedoms in *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300. Whether the court's decision in that case was right is debatable, but the case is also so different from this one as to be irrelevant. In *Santana*, police officers had arranged a heroin buy. Officers paid one suspect in marked bills to purchase the heroin. The suspect went into a house, and then came out and entered an officer's car with the heroin. Officers arrested the suspect, and

then returned to the house where the heroin had been purchased to retrieve the marked money. The suspect told police that "Mom Santana" had the money. Police saw Mom Santana standing in the doorway of the house. When they announced they were police, Santana retreated into the house. Officers followed and caught her just inside the doorway. Packets of heroin fell from a bag she was holding, and when she emptied her pockets, she produced $70 worth of the marked money.

{¶ 14} As the Supreme Court pointed out, the police in *Santana* were faced with "a realistic expectation that any delay would result in destruction of evidence." *Santana*, 427 U.S. at 43, 96 S.Ct. 2406, 49 L.Ed.2d 300. They were also dealing with a felony. The Supreme Court was willing to limit Fourth Amendment protections in a case where a serious crime was committed and where evidence of that crime was liable to be compromised. Here, we are asked to weaken the Fourth Amendment in exchange for an arrest on a minor traffic offense where there was no threat of the destruction of evidence.

{¶ 15} We are dealing in this case with a fundamental part of a fundamental right. "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin* (1984), 466 U.S. 740, 748, 104 S.Ct. 2091, 80 L.Ed.2d 732, quoting *United States v. United States Dist. Court for the E. Dist. of Michigan* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752. It is nearly as axiomatic that "the Court has recognized, as 'a "basic principle of Fourth Amendment law[,]" that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Id*. at 749, 104 S.Ct. 2091, 80 L.Ed.2d 732, quoting *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639. The *Welsh* court recognized exceptions for exigent circumstances, but emphasized that "exceptions to the warrant requirement are 'few in number and carefully delineated' * * * and that police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." 466 U.S. at 749-750, 104 S.Ct. 2091, 80 L.Ed.2d

732, quoting *United States v. United States Dist. Court*, *supra*, 407 U.S. at 318, 92 S.Ct. 2125, 32 L.Ed.2d 752. In *Welsh* the court was quick to point out that the exception carved out by *Santana* concerns "hot pursuit of a fleeing *felon*." (Emphasis added.) *Id*. at 750, 104 S.Ct. 2091, 80 L.Ed.2d 732.

{¶ 16} The gravity of tinkering with the protections of the Fourth Amendment is appreciated by the Supreme Court, and that court emphasizes that the circumstances of a particular situation must be grave enough to merit a lifting of those protections: "Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. * * * When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." (Footnote omitted.) *Id*. at 750, 104 S.Ct. 2091, 80 L.Ed.2d 732.

{¶ 17} The government could not rebut the presumption of unreasonableness in this case because it involved only a minor traffic offense. The majority breathlessly depicts the pursuit and detention of Finchum in the manner of a television police drama. They should have given it the *Dragnet* approach—the facts, and only the facts. Finchum spun his tires when a traffic light turned green, later fishtailed his car when making a right turn, and again spun his tires when accelerating from a stop sign. Judging from the charge eventually brought against him, it appears that Flinchum did not squeal his tires, did not cross a center line, did not speed, did not make an illegal left turn, did not fail to use his blinker, did not fail to stop at a stop sign, did not fail to update his license tags, did not illegally park. The Middletown police officers, on the other hand, upon viewing Finchum's acts, did not activate their flashing lights, or their siren. After Flinchum had parked his car, he ran toward his house when he saw the Middletown police cruiser stop in

front of his parked vehicle. No one disputes that Finchum was already running toward his house before an officer said anything to him. The ten to fifteen yards between Finchum's car and his back door is the length of what the city calls "hot pursuit."

{¶ 18} The whole chase of Flinchum was more lukewarm amble than hot pursuit. In any event, no recitation of the facts can change the truth that the police officer in this case burst into Finchum's house to arrest a mere tire spinner. What do we gain by the majority's opinion? Police can enter the homes of tire spinners without a warrant, without knocking, without asking the spinner to please step outside. What do we lose? From a practical standpoint, we place homeowners and police officers in dangerous situations. From a jurisprudential standpoint, we give up part of a right that has been jealously guarded for over two hundred years.

_____

*Bruce E. Fassler,* Middletown City Prosecutor*,* for appellee.

*Repper & Powers* and *Christopher J. Pagan,* for appellant.

*Betty D. Montgomery,* Attorney General, and *David M. Gormley,* State Solicitor, for the state of Ohio.

_____