OPINION
{¶ 1} The State of Ohio appeals pursuant to Crim.R. 12(K) from the trial court's decision sustaining appellee Lloyd Kemp's motion to suppress all evidence obtained as a result of a warrantless entry into an apartment. In its sole assignment of error, the State contends Kemp's motion should have been overruled because police officers entered the apartment and seized the evidence lawfully.
 {¶ 2} Upon review, we conclude that the police officers had probable cause to believe a crime had been committed in the apartment, and exigent circumstances justified dispensing with a warrant. Accordingly, we will reverse the trial court's decision sustaining Kemp's motion to suppress.
 I. {¶ 3} When confronted with a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. State v. Retherford (1994),93 Ohio App.3d 586, 592. Accordingly, in reviewing a ruling on a motion to suppress, we give broad deference to the trial court's findings of fact if they are supported by competent, credible evidence. Id.
 {¶ 4} In the present case, the record supports the following factual findings made by the trial court after hearing testimony at a suppression hearing:
 {¶ 5} "On November 7, 2002, the Dayton Police Department received an anonymous phone call from a pay phone on Fairview Avenue in Dayton reporting drug activity at 1036 Cherry Drive, Apartment 11. The caller said that there were two occupants in the apartment, both black males, one slimmer than the other, both wearing blue shirts and jeans, that there was heroin and cocaine in the apartment, and that one of the occupants had a gun. Eleven-year veteran of the Dayton Police Department Mark Ponichtera (`Ponichtera') was dispatched to 1036 Cherry Drive, Apartment 11, the location identified by the anonymous tipster. The call evaluator who took the 911 call typed the following summary which was displayed on Ponichtera's in-car computer: `Check for 2 BM's selling drugs from inside Apt #11. Crack. Heroin. They have guns. One BM. Big. Drk blue shirt and jeans. Slender BM. Drk shirt/jeans. Check for drugs in the kitchen cabinet and by the living room couch.' Ponichtera messaged two colleagues, Officers Angela Woods and Eugene Bell, who agreed to go to the apartment with him. All three were in uniform.
 {¶ 6} "Once at the apartment building, the police went up stairs to reach apartment 11. Ponichtera knocked on the door. Someone inside the apartment asked twice, `Who is it?' Ponichtera responded each time, `Mark,' admitting on cross examination that he did not identify himself as a police officer because he did not want the occupants to know police were there. One occupant, later identified as [co-defendant Steven] Burchett, opened the door slowly, pointing a handgun out of the door before he looked through the opening. The officers saw the gun. Burchett saw the officers and pulled the gun back into the apartment. Ponichtera pushed the apartment door open and Burchett placed the gun on the floor and stepped back. The other officers followed Ponichtera in, and they handcuffed the three occupants [who included Lloyd Kemp]. The apartment was a small efficiency apartment and the officers observed crack cocaine on the kitchen counter. They then contacted the detectives in the drug unit to obtain a search warrant, staying with the suspects until the warrant was brought to the scene.
 {¶ 7} "After the search warrant was brought to the house, the officers searched the suspects and house, finding heroin, crack cocaine, money, a shot gun, and other evidence." (Doc. #28 at 1-3).
 {¶ 8} Based on the foregoing facts, Kemp was arrested and charged with possession of crack cocaine. He later moved to suppress all evidence obtained as a result of the warrantless entry into the apartment. In an October 6, 2003, decision, the trial court sustained the motion, holding (1) that articulable suspicion of drug activity could not support the warrantless entry into the residence, (2) that the police officers lacked probable cause to believe that criminal activity was occurring inside the apartment, and (3) that no exigent circumstances justified the warrantless entry.
 {¶ 9} In support of its decision, the trial court reasoned as follows:
 {¶ 10} "The Fourth Amendment allows a so-called `Terry' search of a person or vehicle upon mere reasonable articulable suspicion. Terry v. Ohio (1968), 192 U.S. 1; Michigan v. Long
(1983), 463 U.S. 1032. However, the State cites no case where the police were allowed to enter a residence to perform a Terry
search or where the police were allowed to search a residence upon mere reasonable articulable suspicion.
 {¶ 11} "* * * [T]he police officers were investigating an anonymous tip of drug activity at the apartment. The tip did not bear the required indicia of reliability to rise to the level of probable cause. Even if the tip had been sufficiently reliable, there were no exigent circumstances which required that the police search the apartment rather than seek a search warrant.
 {¶ 12} "The police certainly were allowed to investigate the tip by knocking on the door to make inquiry of anyone in the apartment. However, they were not allowed to enter the apartment since they did not have a search warrant. The State has failed to show that there was probable cause to believe a crime was being committed, and has also failed to show that there were exigent circumstances that would justify the police pushing the door open and entering.
 {¶ 13} "It may be disconcerting that a person can open the door to his residence with a gun in his hand, but that is the law in Ohio. While Burchett was charged with felonious assault of a police officer, there was no evidence adduced at the suppression hearing showing that he did more than point the gun at the officer, not knowing it was a police officer at the door. `The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of felonious assault as defined by R.C. 2903.11(A)(2).' State v. Brooks
(1989), 44 Ohio St.3d 185, syllabus. The Court further finds on this record that the police lacked probable cause to arrest Defendant Burchett for assault on a police officer.
 {¶ 14} "The State has not carried its burden of showing that the police had probable cause to believe a crime was being committed and that there were exigent circumstances that justified immediate entry of the police into Apartment 11, 1036 Cherry Drive." (Doc. #28 at 3-5).
 II. {¶ 15} Although we defer to the trial court's findings of fact, we must conduct a de novo review to apply those facts to the requirements of the Fourth Amendment. Ornelas v. UnitedStates (1996), 517 U.S. 690. In other words, we determine for ourselves, based on the facts found by the trial court, whether the police officers' entry into the apartment at 1036 Cherry Drive violated the Fourth Amendment.
 {¶ 16} A warrantless entry into a private residence is presumptively unreasonable under the Fourth Amendment. State v.McHale, Montgomery App. No. 18963, 2002-Ohio-2373. Invasion of the sanctity of the home is the chief evil against which the Fourth Amendment's warrant requirement is directed. Id. The government bears the burden to overcome the presumption that a warrantless entry into a home is per se unreasonable by demonstrating that it falls within one of the few, well-recognized exceptions to the warrant requirement. Id. One such exception is an entry based on exigent circumstances. This exception is founded on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a warrant. Id. The exigent circumstances doctrine "justifies a warrantless entry into a residence in a variety of situations, including when someone inside poses a danger to the police officer's safety." State v. Barber,
Montgomery App. No. 19017, 2002-Ohio-3278 at ¶ 14.
 {¶ 17} To justify a warrantless entry into a residence in order to seize a person or search for evidence of a crime under the rubric of exigent circumstances, a true emergency must exist which excuses the failure to obtain a warrant and police must have probable cause to believe that a crime has been committed.State v. Cheadle (July 14, 2000), Miami App. No. 00CA03. A warrantless emergency entry cannot be used as a fishing expedition for evidence of a crime. In addition, the right of police to make a warrantless intrusion must be circumscribed strictly by the exigencies that justify its initiation. Exigent circumstances may justify a limited warrantless intrusion, but the duration and scope of the intrusion are evaluated in terms of the emergency. Once the emergency has been alleviated, further intrusion must be sanctioned by a warrant. Id.
 {¶ 18} In the present case, the foregoing principles justified the warrantless entry into the apartment where Kemp was found in the presence of crack cocaine. As an initial matter, we note that the police officers lacked probable cause to obtain a warrant prior to approaching the apartment. Although they had received a tip about drug activity inside 1036 Cherry Drive, the tip was anonymous and its veracity was unknown. Consequently, the officers acted reasonably in approaching the residence to investigate the tip, and their mere knock on the door did not implicate the Fourth Amendment. State v. Harris, Montgomery App. No. 19479, 2003-Ohio-2519 at ¶ 12. When an occupant of the apartment asked who was at the door, Officer Ponichtera responded truthfully, "Mark." His failure to volunteer that he was a police officer did not render his conduct unreasonable or unlawful.State v. Barber, Montgomery App. No. 19017, 2002-Ohio-3278 at ¶ 20.
 {¶ 19} The key issue before us is the legal effect of Burchett's decision to respond to the knock by opening the door with a gun pointed outside. In the factual portion of its written opinion, the trial court found that Burchett "opened the door slowly, pointing a handgun out of the door before he looked through the opening." (Doc. #28 at 2). This finding is consistent with Ponichtera's uncontroverted testimony that Burchett pointed the gun at him. (Suppression transcript at 55). The trial court appears to have minimized the legal significance of this conduct, however, by stressing that Burchett did nothing "more than point the gun at the officer, not knowing it was a police officer at the door." (Doc. #28 at 4). The trial court also observed that Ohio law does not prohibit a person from answering a knock at the door "with a gun in his hand[.]" (Id.). As a result, the trial court determined that the officers lacked probable cause to believe a crime (namely felonious assault or assault on a police officer) had been committed. The trial court also found no exigent circumstances.
 {¶ 20} Upon review, we disagree with the trial court's analysis. Burchett did not merely answer the door with a gun in his hand Rather, the trial court found that he pointed it out the door. Although Burchett's act of pointing a firearm out the door may not have constituted felonious assault or assault on a police officer, Ponichtera and the other officers reasonably may have believed that Burchett had committed the crime of aggravated menacing, a first-degree misdemeanor. Section 2903.21 of the Revised Code defines this offense as knowingly causing the victim to believe that the offender will cause serious physical harm to the person or property of the victim. When Burchett opened the door with a gun pointed at Ponichtera, his conduct reasonably caused Ponichtera to fear that he would be shot. (Suppression transcript at 19). Thus, Ponichtera and his companions had probable cause to believe Burchett had committed the crime of aggravated menacing. This is true even if Burchett did not actually intend to inflict serious physical harm on Ponichtera or even to place the officer in fear of serious physical harm. Although Burchett did not testify at the suppression hearing, it is possible that the presence of an unknown "Mark" at the door caused him to fear for his own safety, and that he only displayed the weapon in self-defense. Even if his motive was purely defensive, however, the fact remains that he pointed a gun out the door in the direction of whoever was outside. As a result, Ponichtera had probable cause to believe that Burchett had knowingly placed him in fear of serious physical harm, regardless of whether Burchett subjectively intended to do so. In reaching this conclusion, we must view the facts from the position of a reasonable officer on the scene, who in responding to an anonymous call about drug dealing is met with the barrel of a handgun emerging from behind a door, rather than through the 20/20 vision of hindsight. Under the circumstances as he perceived them, Ponichtera objectively and reasonably feared for his safety, and he had probable cause to believe that Burchett was guilty of aggravated menacing.
 {¶ 21} Burchett's act of emerging with a gun pointed at Ponichtera also created an emergency situation that justified the police officers in forcing open the door to disarm him. The officers were not required to retreat in the face of a threat with a firearm. They did not know how many other people or weapons were inside the apartment. Nor did they know whether Burchett was withdrawing from the doorway merely to find a better location from which to fire his weapon. In short, Burchett's appearance in the doorway with a firearm pointed at Ponichtera provided exigent circumstances, based on concerns for officer safety, that justified dispensing with a warrant. We note too that when exigent circumstances exist, police officers may enter a residence without a warrant, regardless of whether the offense at issue is a felony or a misdemeanor. Middletown v. Flinchum,95 Ohio St.3d 43, 2002-Ohio-1625.[1] As a result, the police officers' warrantless entry into 1036 Cherry Drive did not violate the Fourth Amendment.
 {¶ 22} In reaching the foregoing conclusion, we find no merit in Kemp's argument that Ponichtera and the other police officers improperly created the exigent circumstances by knocking on the door without identifying themselves as police officers. As noted above, the officers lacked probable cause to obtain a warrant based solely on the anonymous tip. As a result, they acted reasonably in investigating the tip by knocking on the door. Moreover, when asked who was at the door, Ponichtera responded truthfully, "Mark." While the exigency in this case ultimately resulted from the officers' investigatory conduct, they did not create the exigency. Burchett did that when he voluntarily opened the door with a firearm pointed toward whoever was outside.Barber, supra.
 {¶ 23} Once inside the front door of the apartment, Ponichtera observed what appeared to be crack cocaine sitting on a counter in plain view. (Suppression transcript at 25). The officers then detained Burchett, Kemp, and another person and obtained a search warrant, pursuant to which they found additional evidence. Kemp makes no argument that evidence found in the apartment is subject to suppression if the police officers lawfully entered the apartment.
 {¶ 24} In light of our determination herein that the warrantless entry into the apartment was lawful under the Fourth Amendment, we find no basis for suppressing the evidence and we sustain the State's assignment of error. The trial court's October 6, 2003, decision, order and entry is reversed, and this cause is remanded for further proceedings.
Fain, P.J., and Young, J., concur.
[1] The exigent circumstance that justified a warrantless entry into a home in Flinchum was the "hot pursuit" of an individual suspected of a misdemeanor traffic offense. We question the validity of the State's argument herein that "hot pursuit" applies equally to Ponichtera's entry into the apartment. The "hot pursuit" exception to the warrant requirement generally applies when police pursue a suspect from a public place to a private place. In the present case, however, Burchett was inside the apartment, a private place, at all relevant times. Nevertheless, as noted above, we believe a different exigent circumstance, concern for officer safety, justified the warrantless entry into the apartment to disarm Burchett after he pointed a gun at Ponichtera.