JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This is one of four criminal appeals arising out of the same incident.[1] The Cuyahoga County grand jury indicted defendant-appellant Gawayne Morrison and co-defendants Okella Scott, Jatyus Mitchell, and Shawn Williams each on one count of drug possession with a firearm specification in violation of R.C. 2925.11 and 2941.141, one count of drug trafficking with a firearm specification in violation of R.C. 2925.03 and 2941.141, and one count of possession of criminal tools in violation of R.C. 2923.24. A jury found appellant and all three co-defendants guilty of drug possession, drug trafficking and possession of criminal tools. The trial court sentenced each defendant to a total of six years in prison and imposed a $10,000 mandatory drug fine. Appellant appeals his conviction and sentence alleging three assignments of error. For the reasons stated below, we find appellant's assignments of error to be without merit and affirm his convictions and sentence.
 {¶ 2} In late August 2005, the Cleveland police received a tip by a confidential reliable informant that a black male known as "Q" was trafficking large quantities of marijuana from the downstairs unit of a house at 1369 East 93rd Street in Cleveland. The police set up a controlled purchase of marijuana using the informant. The informant went into the house with a predetermined amount of marked currency and returned from the house with two bags containing 10 pounds *Page 4 
of marijuana. The informant told police there were other persons in the house with "Q." The informant described the persons dealing the drugs as being Jamaican or of Jamaican descent.
 {¶ 3} Based upon this information, Cleveland police detective Todd Clark sought and received a warrant to search the premises from a judge of the Cuyahoga County Court of Common Pleas. The police executed the warrant at approximately 9:45 p.m. on August 31, 2005. After receiving a report from one of the police detectives of males running up the stairs inside the house, the SWAT unit hit the front door with a battering ram. Officers of the SWAT unit heard footsteps in another part of the house fleeing from the police and smelled a strong odor of marijuana. The SWAT unit cleared the first floor and continued up the back stairs to the second and third floors. The officers found appellant and Williams on the second floor. As the SWAT unit cleared the two rooms on the third floor, they discovered Scott and Mitchell hiding in a crawl space. The two males were ordered out of the crawl space and officers discovered a .22 caliber pistol near where Mitchell had been hiding. All four males were detained and placed in police cruisers.
 {¶ 4} Cleveland narcotics officers seized more than 25 pounds (11,654.87 grams) of marijuana, $22,446 in U.S. currency, numerous firearms including a shotgun, a replica AK-47 rifle, handguns, scales, and other drug paraphernalia during the search. Police also recovered the prerecorded money used by the informant for the earlier drug buy. *Page 5 
 {¶ 5} During the search of a green Chevy Impala parked behind the house, the police found a note with a phone number and the statement, "I want my rent money now!" The phone number belonged to the landlord of a property at 16413 Arcade Avenue. Police contacted the landlord and, from photographs supplied by the police, she identified one of the co-defendants, Mitchell, as her tenant.
 {¶ 6} A police dog brought to the Arcade property alerted police to the presence of narcotics at the apartment door. The police entered the apartment using a key provided by the landlord and secured the premises. Officers observed weapons in plain view and relayed this information to Detective Clark who secured a search warrant from the same judge for the Arcade apartment. During this second search, police seized a small amount of marijuana, four guns, $32,800 in U.S. currency, and a money counter. This appeal does not raise any issue pertaining to this second search.
 I {¶ 7} In his first assignment of error, appellant claims that the trial court erred by denying his motion to suppress. Appellant asserts that the police officers both exceeded the scope of the search warrant and violated the "knock and announce" rule. We disagree.
 {¶ 8} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by *Page 6 
competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." State v.Curry (1994), 95 Ohio App.3d 93, 96 (citations omitted).
 {¶ 9} Appellant argues that the police entry into, and search of, the second floor apartment exceeded the scope of the search warrant which specified the downstairs of the premises. The search of the second floor of the premises did fall outside of the scope of the search warrant. It was therefore a warrantless search. Warrantless searches are, per se, unreasonable, and therefore invalid unless they fall within one of the established exceptions. Katz v. United States (1967), 389 U.S. 347. Of particular relevance here is the "hot pursuit" exception.
 {¶ 10} In Warden v. Hayden (1967), 387 U.S. 294, the Supreme Court of the United States recognized the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons. The court approved this entry stating, "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." Id. at 298-299. Furthermore, a suspect may not evade arrest *Page 7 
simply by fleeing pursuing officers and escaping to the sanctuary of his or her private home. Middletown v. Flinchum, 95 Ohio St.3d 43,2002-Ohio-1625.
 {¶ 11} In the case at bar, police had information that a large scale drug enterprise was being operated out of the downstairs unit of the premises. A controlled buy within 24 hours of the warrant resulted in the purchase of 10 pounds of marijuana. The police informant indicated that there were other persons on the premises. The police had reason to believe these persons were armed. The search warrant gave police the authority to search the downstairs unit for these persons believed to be involved in the drug trafficking operation.
 {¶ 12} While executing the search warrant, a police detective observed a black male look out the front door of the house and then turn and flee through the house. The detective heard people running from the first floor up the stairs at the back of the house. Police officers then pursued these people through the downstairs unit and up the stairs, discovering appellant and three other defendants trying to hide upstairs. At the suppression hearing, the trial court heard testimony from two police officers and from appellant and co-defendant Williams. The court found the testimony of both defendants to be without credibility. The court found that appellant and the other defendants fled upstairs upon the arrival of the police. These findings are supported by competent, credible evidence and we therefore must accept them. The warrantless entry and subsequent search of the upstairs premises were justified by the police being in hot pursuit of appellant and the other defendants as *Page 8 
they fled upstairs and were therefore lawful. Appellant could not avoid arrest simply by outrunning police and fleeing to another apartment or floor in the house.
 {¶ 13} Appellant also argues that police violated the "knock and announce" rule found at R.C. 2935.12. He asserts that the police testimony showed that the SWAT unit knocked and then waited only five seconds before entering the downstairs premises and that there was no testimony that the police knocked and announced at all before entering the upstairs unit.
 {¶ 14} R.C. 2935.12 requires police officers to knock, announce their purpose, and be refused admittance before they may break down the door of a building to enter it. The knock and announce principle is an element of the Fourth Amendment's guarantee against unreasonable search and seizure. See Wilson v. Arkansas (1995), 514 U.S. 927, 929. However, where exigent circumstances exist, the officers conducting the search are justified in not strictly following the requirements of R.C.2935.12. State v. DeFiore (1979), 64 Ohio App.2d 115. "Exigent circumstances" include situations where officers believe that evidence can and will be destroyed on short notice, or that compliance could place the officers in peril of great bodily harm. Id. at 117, n. 1.
 {¶ 15} In the instant case, the state asserts that under the circumstances the police were excused from strict compliance with the knock and announce rule. We agree. Detective Cudo testified that as the SWAT unit approached the house, he saw a black male look out the front door and then run to the rear of the house. He *Page 9 
stated he heard more than one person fleeing from the downstairs unit and running up the back stairs. Officer Connelly testified that the SWAT unit knocked, announced, and then waited about five seconds before forcibly entering the downstairs premises. Before pursuing the defendants upstairs, the police observed drugs, money, and weapons in plain view. The police had reason to believe that the defendants may be armed. These facts demonstrate that there were exigent circumstances which permitted the forcible entry into the premises without strict compliance with R.C. 2935.12.
 {¶ 16} Appellant's first assignment of error is overruled.
 II {¶ 17} For his second assignment of error, appellant asserts he was provided ineffective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, appellant must demonstrate that he was deprived of a fair trial. A review of a claim of ineffective assistance of counsel requires a two-part analysis. Appellant must show both that the performance of his defense counsel was seriously deficient, and that the deficiency prejudiced his defense such that the result of the trial would have been different had he been provided proper representation. Strickland v. Washington (1984), 466 U.S. 668;State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 18} Appellant claims that he was prejudiced by his counsel's failure to challenge the state's execution of the search warrant. This claim is unfounded in *Page 10 
fact. The record reflects that appellant's counsel filed a motion to suppress on his behalf which alleged both that the police search exceeded the scope of the warrant, and that the police violated the knock and announce rule. Appellant was present and gave testimony at the suppression hearing during which his counsel actively argued on his behalf.
 {¶ 19} Appellant also claims that he was prejudiced by counsel's joint representation of himself and a co-defendant and counsel's failure to move for severance under Civ.R. 8(A). This claim is likewise unfounded. Dual representation of criminal defendants is not a per se violation of due process. Holloway v. Arkansas (1978), 435 U.S. 475, 482, citingGlasser v. United States (1942), 315 U.S. 60, 92. It is possible that choosing dual representation can work to the advantage of the clients in cases when they mount a common defense against charges. Id. at 483.
 {¶ 20} Appellant did not object to the dual representation at trial. Where no objection is raised to the trial court regarding the joint representation, appellant must demonstrate that an actual conflict of interest adversely affected his counsel's performance. Cuyler v.Sullivan (1980), 446 U.S. 335, 348. To demonstrate an actual conflict of interest, appellant must be able to point to specific instances in the record to suggest an actual conflict or impairment of his interests.State v. Terry (May 7, 1987), Cuyahoga App. No. 52072. Appellant neither identifies a single instance in the record that would suggest a conflict of interest nor presents a viable alternative defense that trial counsel could have pursued to appellant's benefit. *Page 11 
There is a strong presumption that trial counsel's representation falls within the wide range of reasonable professional assistance.State v. Bradley (1989), 42 Ohio St.3d 136; Strickland, 466 U.S. at 690. Appellant's second assignment of error is overruled.
 III {¶ 21} In his third assignment of error, appellant asserts that his sentence must be overturned and remanded to the trial court for resentencing in light of the Ohio Supreme Court's decision in State v.Foster. Appellant claims that the trial court erred in violation ofFoster by sentencing him to a one-year sentencing enhancement/gun specification to run consecutive to the five-year sentence for the felony offenses.
 {¶ 22} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio held that certain sections of Ohio's sentencing code were unconstitutional because they required judicial findings of fact not proven to a jury beyond a reasonable doubt before a court could impose certain sentences. The Supreme Court excised certain provisions of the code regarding consecutive sentences and maximum sentences. The Supreme Court further held that, after the severance, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."Foster, supra, at T|100. *Page 12 
 {¶ 23} Appellant is mistaken in his allegation that he was sentenced under statutory provisions severed by Foster. The record reflects that the trial court properly imposed a mandatory, consecutive one-year prison term for the firearm specification per R.C. 2941.141. Only those sentencing provisions relating to consecutive sentences that mandated judicial fact finding were severed under Foster. Those provisions of R.C. 2929.14 which impose nondiscretionary consecutive terms for firearm specifications were not severed because no judicial fact finding was required under those sections. The trial court's imposition of a one-year prison term for the firearm specification to be served consecutive to the five-year prison term for the felony drug counts does not violate State v. Foster Our decision in this case is in agreement with recent Fifth and Eleventh District Courts of Appeals' decisions finding Foster does not apply to sentences imposed pursuant to R.C.2929.14(D)(1)(a)(iii) and 2941.141, as those sections do not require judicial fact finding. State v. Torres, Lake App. No. 2003-L-153,2006-Ohio-1877; State v. Davis, Richland App. No. 06-CA-63,2007-Ohio-923. Appellant's third assignment of error is overruled.
 {¶ 24} The judgment of the trial court is hereby affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The *Page 13 
defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR
[1] The other three appeals can be found at: State v. JatyusMitchell, Cuyahoga App. No. 88131; State v. Shawn Williams, Cuyahoga App. No 88137; and, State v. Okella Scott, Cuyahoga App. No. 88113. *Page 1