The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson*, 173 Ohio App.3d 669, 2007-Ohio-6146.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 07CA009140.

Decided Nov. 19, 2007.

Dennis Will, Lorain County Prosecuting Attorney, and Billie Jo Belcher, Assistant Prosecuting Attorney, for appellee.

Kenneth N. Ortner, for appellant.

WHITMORE, Presiding Judge.

{¶ 1} Defendant-appellant, Jermaine Johnson, appeals from the judgment of the Lorain County Court of Common Pleas that denied his motion to suppress. We reverse.

I

{¶ 2} Shortly after midnight on February 5, 2005, Officer Troy Donaldson was dispatched to investigate a noise complaint at the Motel 6 in Amherst. Donaldson approached the desk clerk and was informed that the room was being rented by Johnson. Donaldson then proceeded to Johnson's room to ask that he quiet down. When Johnson opened the door to the room, Donaldson immediately smelled marijuana and viewed what he believed to be two marijuana blunts.

{¶ 3} Donaldson then informed Johnson of the noise complaint and told him that he could smell marijuana. Donaldson then asked and was denied permission to enter the room. Donaldson ordered Johnson out of the room, and Johnson responded by attempting to shut the door. The officer then grabbed Johnson's arm, the two struggled, and they ended up inside the hotel room. Johnson continued to struggle, and ultimately, Donaldson attempted to taser him. Johnson deflected one of the taser prongs with a garbage can lid, charged Donaldson, and ran out the hotel-room door, with Donaldson in pursuit. After losing sight of Johnson, Donaldson contacted the hotel clerk and requested that he disable the key cards to the hotel room in order to deny access to anyone returning to the room. A short while later, Donaldson received word that Johnson had been arrested by other officers.

{¶ 4} After being informed that Johnson had been arrested, Donaldson returned to the motel and received a key from the desk clerk. Donaldson went to the room, opened the door, and searched the area. During that search, Donaldson observed several items of drug paraphernalia in plain view. In addition, the officer observed that the bed blanket had been moved and noticed that the pillow case had an odd shape. Upon inspection, Donaldson realized that the pillow case had cocaine stuffed in it.

{¶ 5} Based upon the above facts, Johnson was indicted on the following charges: one count of obstructing official business in violation of R.C. 2921.31(A), one count of possession of cocaine in violation of R.C. 2925.11(A), one count of possession of drug paraphernalia in violation of R.C. 2925.14(C), one count of assault on a police officer in violation of R.C. 2903.13(A), one count of possession of marijuana in violation of R.C. 2925.11(A), and one count of drug trafficking in

violation of R.C. 2925.03(A). Johnson moved to suppress the evidence seized by Donaldson, asserting that his Fourth Amendment rights had been violated. The trial court disagreed and denied his motion. Consequently, Johnson pleaded no contest to the indictment and was found guilty on each of the counts by the trial court. Thereafter, the trial court sentenced Johnson to 11 months in prison and ordered the sentence to be served consecutively with Johnson's sentence from another matter. Johnson timely appealed his convictions, raising three assignments of error for review.

## II

### Assignment of Error Number One

The Amherst police officer, Donaldson, did not have a search warrant to enter the hotel room of appellant, Jermaine Johnson, and therefore the trial court should have suppressed any evidence obtained by the officer.

### Assignment of Error Number Two

The trial court erred to the detriment of Mr. Johnson by not suppressing evidence obtained in his hotel room when officers searched his room without a warrant subsequent to their initial illegal entry in violation of the Ohio Constitution, Section 14, Article 1, and the Fourth Amendment to the United States Constitution after Johnson had left the room.

### Assignment of Error Number Three

The trial court erred to the detriment of Mr. Johnson when the court ruled that Donaldson did not enter Mr. Johnson's room until after he had been "dragged" into the room. Donaldson entered Mr. Johnson's room when he grabbed his arm. Mr. Johnson had privilege to resist.

{¶ 6} Because Johnson's assignments of error are interrelated, we will address them together. In each of his assignments of error, Johnson asserts that the trial court erred when it denied his motion to suppress. We agree.

{¶ 7} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. *State v. Jones* (Mar. 13, 2002), 9th Dist. No. 20810, 2002 WL 389055, at *1. It follows that this court's review of a denial of a motion to suppress involves both questions of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. As such, this court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. *State v. Searls* (1997), 118 Ohio App.3d 739, 741, 693 N.E.2d 1184. However, the application of the law to those facts will be reviewed de novo. Id.

■ {¶ 8} The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated." Section 14, Article I of the Ohio Constitution mirrors this provision.

> The United States Supreme Court has repeatedly held * * * that searches and seizures inside a home without a warrant are presumptively unreasonable. An occupant can act on that presumption and refuse admission. The Fourth Amendment gives him a constitutional right to refuse to consent to entry and search. The assertion of that right cannot be a crime.

(Citations omitted.) *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 4, 28 OBR 9, 501 N.E.2d 1226. We have held that "the initial consent involved in opening a door can be revoked by a defendant through the privilege against unreasonable searches." *State v. Sloan,* 9th Dist. No. 05CA0019–M, 2005-Ohio-5191, 2005 WL 2401566, at ¶ 15, citing *State v. Cummings* (Jan. 16, 2002), 9th Dist. No. 20609, 2002 WL 57979, at *3.

■ {¶ 9} When Donaldson requested that Johnson leave his hotel room, Johnson refused and attempted to shut the door to his room. Donaldson prevented this action by grabbing Johnson's arm. We find Donaldson's actions to be analogous to our precedent in which an officer had placed his foot in a doorway to prevent an occupant from closing that door. See, e.g., *Sloan,* supra. Contrary to the state's position, therefore, Donaldson's act prevented Johnson from exercising his Fourth Amendment right. Consequently, we find no merit in the state's contention that the Fourth Amendment is not implicated because Donaldson was "dragged" into the hotel room by Johnson.

{¶ 10} The state, however, has also argued that exceptions to the warrant requirement justified Donaldson's entry into the hotel room. Specifically, the state has argued that the hot-pursuit doctrine and the presence of exigent circumstances justified Donaldson's actions. We disagree.

**Hot Pursuit**

■ {¶ 11} Police officers may lawfully enter a private residence without a warrant if they are in hot pursuit of a suspect. *State v. Mathis,* 9th Dist. Nos. 22039 and 22040, 2004-Ohio-6749, 2004 WL 2896471, at ¶ 29. In determining whether an officer was in hot pursuit, we must review the totality of the circumstances. Id. In *Middletown v. Flinchum* (2002), 95 Ohio St.3d 43, 765 N.E.2d 330, the Ohio Supreme Court held, "When officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor." Id. at paragraph one of the syllabus. This court has also recognized that "[a] suspect may not avoid arrest simply by outrunning the police and entering a residence." *Mathis* at

¶ 31, citing *United States v. Santana* (1976), 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300. " '[A] suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place.' " *Mathis* at ¶ 31, quoting *Santana,* 427 U.S. at 43, 96 S.Ct. 2406, 49 L.Ed.2d 300. Moreover, hot pursuit "need not be an extended hue and cry 'in and about [the] public streets.' " *Santana,* 427 U.S. at 43, 96 S.Ct. 2406, 49 L.Ed.2d 300, quoting *Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

{¶ 12} In support of its argument, the state has relied upon *Santana,* asserting that its facts are analogous to those presented herein. In *Santana,* officers arranged a controlled narcotics buy using an undercover officer. The undercover officer gave his money to a woman who entered a nearby residence and returned with drugs. Upon her arrest, that woman indicated that Santana was in possession of the drug money. Officers then approached Santana's residence. At that time, Santana was standing in the doorway of her house. Police identified themselves, and Santana retreated into her home, where she was arrested. Under those facts, the U.S. Supreme Court found that the officer's entry was justified under the "hot-pursuit" doctrine.

{¶ 13} The Ohio Supreme Court extended the hot-pursuit doctrine to misdemeanor offenses in *Flinchum,* 95 Ohio St.3d 43, 765 N.E.2d 330. In *Flinchum,* officers observed the defendant driving in a sporadic manner, and when they approached him in his driveway, he ran to the back of his house and entered his kitchen. In *Flinchum,* it was undisputed that officers had probable cause to arrest the defendant for driving under the influence when they entered his home.

{¶ 14} Unlike the officers in *Santana* and *Flinchum,* Donaldson did not have probable cause to *arrest* Johnson when Johnson sought to retreat. As Donaldson conceded during his testimony, the sole information he possessed indicated that Johnson was committing a minor misdemeanor. Donaldson further conceded that while he could issue a citation for that offense, it did not grant him the authority to arrest Johnson. See *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, at ¶ 25 (finding that an arrest for a minor misdemeanor without reliance on one of the statutory exceptions in R.C. 2935.26 violated the Ohio Constitution). The state has not asserted at any stage of the proceedings that one of the statutory exceptions contained in R.C. 2935.26 authorized Donaldson to arrest Johnson for a minor misdemeanor. In addition, there is no evidence in the record to support an assertion that any of the exceptions would apply. See, e.g., *Akron v. Gardner,* 9th Dist. No. 22062, 2004-Ohio-7165, 2004 WL 3017231, at ¶ 19 (noting that there was no evidence to suggest that the defendant had refused to sign a citation and, thus, no evidence existed to support an arrest for a minor misdemeanor). In this matter, Donaldson specifically stated that he did not intend to issue a citation to Johnson, but merely wanted to interview him.

Donaldson, therefore, did not have the authority to effectuate an arrest, and we find the hot-pursuit doctrine inapplicable.

**Exigent Circumstances**

{¶ 15} In *Welsh v. Wisconsin* (1984), 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732, the United States Supreme Court indicated that the gravity of the underlying offense must be considered in deciding whether an exigency exists. Id. In *Welsh,* the court refused to apply the exigent-circumstances exception to the warrant requirement when the police entered the defendant's home without a warrant to arrest him for a noncriminal traffic offense. Id. at 753–754, 104 S.Ct. 2091, 80 L.Ed.2d 732 (noting that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense," such as the kind at issue in *Welsh,* has been committed). See also *Elyria v. Tress* (1991), 73 Ohio App.3d 5, 8–9, 595 N.E.2d 1031 (holding that a warrantless entry to arrest for driving under the influence does not fall within exigent circumstances); *State v. Robinson* (1995), 103 Ohio App.3d 490, 497, 659 N.E.2d 1292.

{¶ 16} In *Robinson,* the First District was presented with nearly identical facts and concluded as follows:

[T]he United States Supreme Court has found the exigent circumstance premised upon the imminent destruction of evidence of a minor offense to be insufficient to overcome the presumption of unreasonableness that attaches to a warrantless entry. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 754 [104 S.Ct. 2091, 80 L.Ed.2d 732]. The odor of burning marijuana that escaped through the open door provided probable cause only as to the commission of the offense of drug abuse involving the possession of less than one hundred grams. The Ohio General Assembly has classified the offense as a minor misdemeanor, R.C. 2925.11(C)(3), subject only to a fine, R.C. 2929.21(D), and has further provided that an arrest or conviction for the offense "does not constitute a criminal record." R.C. 2925.11(D). The General Assembly has thus classified the offense in question as the most minor offense possible. Therefore, on the authority of *Welsh,* supra, we hold that the exigent circumstance premised upon the imminent destruction of evidence of the offense of minor-misdemeanor drug abuse was insufficient to overcome the presumption of unreasonableness that attached to the officers' warrantless entry into Robinson's apartment.

Id. We agree with the rationale espoused in *Robinson.* Given that Donaldson only had probable cause to believe that Johnson was committing a minor misdemeanor, we find the exigent-circumstances doctrine inapplicable.

{¶ 17} Accordingly, we hold that Donaldson's initial entry into the hotel room, accomplished by grabbing Johnson's arm, violated the Fourth Amendment. The

state failed to demonstrate that any exception existed to justify Donaldson's action. The trial court, therefore, erred in denying Johnson's motion to suppress.

{¶ 18} Johnson's assignments of error have merit.

### III

{¶ 19} Johnson's assignments of error are sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOORE, J., concurs.

CARR, J., concurs separately.

CARR, J., concurring.

{¶ 20} I agree with the result reached by the majority. I write separately to emphasize the scope of the majority opinion.

{¶ 21} In his third assignment of error, Johnson appears to assert that he cannot be tried for assault because of a Fourth Amendment violation. Specifically, Johnson asserts that he was privileged to defend himself against the officer because the officer was engaged in an unlawful arrest. The matter appears here, however, following Johnson's no-contest plea. Consequently, we cannot and do not reach the issue of whether the Fourth Amendment violations give Johnson a defense if this matter goes to trial.

{¶ 22} Moreover, to the extent that Johnson argues that the exclusionary rule should result in dismissal of these charges, his position is untenable. " 'Application of the exclusionary rule in such fashion,' as one court put it, 'would in effect give the victims of illegal searches a license to assault and murder the officers involved—a result manifestly unacceptable.' " *State v. Barnes* (Dec. 5, 1997), 2d Dist. No. 16434, 1997 WL 752590, at *4, quoting LaFave, Search and Seizure (3d Ed.), Sec. 11.4(j) at 340. Simply stated, "[A]n accused 'cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment.' " *Dayton v. Joy* (July 2, 1990), 2d Dist. Nos. CA11846 and CA11847, 1990 WL 98379, at *2, quoting LaFave, Search and Seizure (2d Ed.), Sec. 1.13(b). Consequently, the Fourth Amendment violations noted by the majority do not serve to legitimize Johnson's assault on the officer.

{¶ 23} With that clarification of the majority's opinion, I concur.