The STATE of Ohio, Appellee,

v.

HUNTINGTON, Appellant.

[Cite as *State v. Huntington,* 190 Ohio App.3d 711, 2010-Ohio-3922.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–10–007.

Decided Aug. 20, 2010.

712

Matthew L. Reger, City of Bowling Green Prosecuting Attorney, for appellee.

Scott T. Coon, for appellant.

---

Osowik, Presiding Judge.

{¶ 1} This is an appeal from a judgment of the Bowling Green Municipal Court that denied appellant's motion to suppress evidence. For the reasons set forth below, this court reverses the judgment of the trial court.

{¶ 2} On May 11, 2009, appellant's friend Brad Waltz contacted the Bowling Green, Ohio, police and reported that he had seen various syringes, vials, and pill bottles that he believed contained steroids in appellant's house. Waltz explained that he had entered appellant's house upon her request to feed her cats while she was on vacation. Waltz allowed officers to enter the residence, where they observed a black bag in plain view on the dining room table. The bag was open, and officers observed vials and pill bottles containing steroids. The officers left the home, and Bowling Green Detective Justin White obtained a search warrant, which was executed later that day. Officers found vials of anabolic steroids as well as used and unused syringes throughout the house. Based upon that evidence, appellant was cited with one count of permitting drug abuse.

{¶ 3} On August 11, 2009, appellant filed a motion to suppress evidence flowing from the entry of the police into her home both before and during the execution of the search warrant. Following a hearing, the trial court found that the search warrant was valid and denied the motion to suppress. In its judgment entry filed October 20, 2009, the trial court found that Waltz had sufficient authority to allow police officers into the common area of appellant's house in her absence, that Detective White had probable cause to believe the bag on the dining room table contained contraband, and that probable cause existed to issue the search warrant based on Detective White's affidavit.

{¶ 4} On January 25, 2010, appellant entered a plea of no contest to an amended charge of obstructing official business, a second-degree misdemeanor.

{¶ 5} On appeal, appellant sets forth the following sole assignment of error:

{¶ 6} "I. The trial court erred in denying appellant's motion to suppress evidence seized by the Bowling Green Police Department pursuant to the illegal search of the appellant's residence on May 11, 2009."

{¶ 7} In support of her assignment of error, appellant asserts that Waltz had been asked to do nothing more than enter the house and feed the cats and therefore did not have authority to consent to the police searching her home.

{¶ 8} Four witnesses testified at the suppression hearing: Brad Waltz, Detective White, appellant's employee Farrah Anderson, and appellant.

{¶ 9} Waltz testified that on May 1, 2009, appellant asked him to feed her cats for three days while she was out of town. Waltz understood that he would be required to do nothing other than feed the cats and give them fresh water. He was not asked to house-sit. Waltz went to the house for the first time on Tuesday, May 5, and let himself in with a front door key that appellant had given him. He further testified that he received a text message from appellant that morning asking him to turn off the outside lights and a light inside at the top of the stairs. When he got to the house, he was unable to find a light switch at the bottom of the stairs, so he went upstairs. While upstairs, Waltz saw a cat dish, which he filled with water from the master bathroom. While in the bathroom, Waltz saw a clear plastic "bag of drugs" next to the sink. Waltz described "vials and pills" that were "some sort of oids." Waltz left and did not go back to the house until the following day, when he "searched for more stuff" in the bathroom.

{¶ 10} Waltz did nothing further until the following Saturday, when he returned and took photographs of the drugs he had seen earlier. At that time, he also observed a bag of "steroids or pain killers" on the dining room table. On Monday, May 11, Waltz called the Bowling Green police and reported having seen what he believed to be illegal drugs in appellant's house. Shortly thereafter, Waltz met Detective White at the house and allowed several officers in as far as the kitchen/dining room area. Detective White then left, intending to get a search warrant, and Waltz returned to work.

{¶ 11} Waltz further testified that he did not have appellant's permission to allow the police to enter the house. He did not at any time contact appellant to ask whether the police could go in the house.

{¶ 12} Detective White testified that on May 11, 2009, he was sent to appellant's residence to investigate a complaint regarding illegal drugs in the house. White and another detective went to appellant's house, where they were met by Waltz and Farrah Anderson, one of appellant's employees. Anderson had been asked by appellant to feed her cats on the days Waltz did not. White testified that Waltz told him he was taking care of appellant's cats and had seen illegal steroids upstairs and on a table downstairs. Both Waltz and Anderson told White that they had appellant's permission to be in the "common area" of the house. White, three other police officers, and Waltz then entered the house. As White walked into the kitchen, he saw a black bag containing some blue vials on the table. The detective reached into the bag and removed a bottle labeled "Anadrol–50," which White knew to be an anabolic steroid. At that point, White announced that he was leaving to get a search warrant. The other officers and Waltz then left the house. White completed an affidavit stating that the police

were looking for drugs and drug paraphernalia, and the search warrant was granted. White returned to appellant's house later that afternoon and executed the search warrant with another officer. White testified that when he returned with the warrant, he understood that appellant was the sole resident of the house. The detective admitted that before he entered the house, he saw a text message that appellant had just sent to Anderson telling him not to let anyone inside. White further admitted that he never received appellant's permission to enter and initially entered based on consent from Waltz, who he understood was there solely to feed appellant's cats. White believed that Waltz and Anderson had authority to allow him to enter the house because they both had permission to enter.

{¶ 13} Farrah Anderson testified that she was asked by appellant to feed the cats for several days and was given a garage door opener so that she could enter the house. Anderson confirmed that after she sent appellant a text message telling her that the police were at the house, appellant replied by text message that Anderson should not let anyone in her home. She then called Waltz and relayed appellant's message. When Anderson arrived at the house, she told the officers who were present that appellant had asked her not to let anyone in. Anderson did not give the police permission to enter at any time.

{¶ 14} Appellant testified that she did not consent to the Bowling Green Police Department searching her residence on May 11, 2009. She did not give either Anderson or Waltz permission to consent to a search of her home. Appellant recalled instructing Anderson to go to her house on the day of the search and not let anyone in.

{¶ 15} In her sole assignment of error, appellant asserts that the trial court erred by not suppressing the evidence seized during the search of her residence. Appellant argues that Waltz did not have the authority to provide consent to search her home and that she did not consent to the search.

■ {¶ 16} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 17} Our review of the trial court's denial of appellant's motion to suppress requires us to conduct a de novo review to determine whether the facts in this case demonstrate that the police obtained the consent of appellant, the home-owner, or another individual who possessed authority over the property.

{¶ 18} The Fourth Amendment to the United States Constitution and Section 14, Article 1, Ohio Constitution, protect citizens from unreasonable search and seizure by the government and state. " '[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Middletown v. Flinchum* (2002), 95 Ohio St.3d 43, 44, 765 N.E.2d 330, quoting *United States v. United States District Court for the E. Dist. of Michigan* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752.

{¶ 19} The government may search without a warrant if the government receives voluntary consent from a person owning the property or from a third party who possesses common authority over the property. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. It is well settled that the prosecution is not limited to proof that consent was given by the defendant; voluntary consent provided by a third party is sufficient to support a search if the third party possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States v. Matlock* (1974), 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242; *State v. Sneed* (1992), 63 Ohio St.3d 3, 584 N.E.2d 1160. "Common authority" rests on "mutual use of the property by persons generally having joint access or control for most purposes." *Matlock* at 171, fn. 7. The burden of establishing that common authority rests upon the state. *Matlock,* supra.

{¶ 20} Further, if consent is given by a third party who in fact does not have valid authority, the determination of whether to enter must "be judged against an objective standard: would the facts available to the officer at the moment * * * 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Illinois v. Rodriguez* (1990), 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 21} The trial court in this case determined that Brad Waltz had been granted authority by appellant to enter the kitchen, a common area of the house, to feed the cats. Therefore, the trial court reasoned, Waltz "had sufficient authority over common areas of the house in his role as cat-sitter to grant police access to the common areas of the Huntington house." The trial court concluded that when Detective White saw the black bag containing suspected illegal drugs on the kitchen table he was legally in appellant's house by virtue of Waltz's consent in appellant's absence.

{¶ 22} The trial court herein equated Waltz having permission to enter appellant's house solely to feed her cats on three occasions with his having "common authority" to consent to a warrantless entry by the police. We find, however, after our de novo review, that there is no evidence in the record that appellant gave Waltz any degree of authority over her property, let alone authority to consent to a warrantless police search of the premises. Waltz merely had appellant's permission to enter the kitchen to feed the cats on three separate days; his presence in appellant's house could reasonably be expected to amount to no more than five or ten minutes on each occasion. He had no other responsibilities with respect to the house. Waltz was not a cotenant and was not staying in the house overnight for an extended period to house-sit. The arrangement between appellant and Waltz simply cannot be construed to have resulted in Waltz having any authority over the premises or the effects sought to be inspected. Waltz did not have "joint access" to the house, nor did he have any manner of "control for most purposes." Further, we find based on the testimony summarized above that the facts available to Detective White upon entering appellant's home prior to obtaining the warrant did not warrant a belief that Waltz had authority over the premises.

{¶ 23} Based on the foregoing, we find that appellant's home was searched illegally and that the trial court therefore erred by denying appellant's motion to suppress. Accordingly, appellant's sole assignment of error is well taken.

{¶ 24} On consideration whereof, the judgment of the Bowling Green Municipal Court is reversed, and the cause is remanded for further proceedings consistent with this decision. Costs of this appeal are assessed to appellee pursuant to App.R. 24.

Judgment reversed.

PIETRYKOWSKI and SINGER, JJ., concur.