JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Jatyus Mitchell, appeals his convictions for several criminal offenses. The Cuyahoga County grand jury indicted appellant on one count of drug possession with a firearm specification in violation of R.C. 2925.11 and R.C. 2941.141, one count of drug trafficking with a firearm specification in violation of R.C. 2925.03
and R.C. 2941.141, and one count of possession of criminal tools in violation of R.C. 2923.24. A jury found appellant guilty on all counts. The trial court sentenced him to a total of six years in prison and imposed a $10,000 mandatory drug fine. Appellant presents four assignments of error for review. For the reasons stated below, we find all four assignments of error to be without merit and affirm the judgment of the trial court.
 {¶ 2} In late August 2005, the Cleveland police received a tip by a confidential reliable informant that a black male known as "Q" was trafficking large quantities of marijuana from the downstairs unit of a house at 1369 East 93rd Street in Cleveland. The police set up a controlled purchase of marijuana using the informant. The informant went into the house with a predetermined amount of marked currency and returned from the house with two bags containing ten pounds of marijuana. The informant told police there were other persons in the house with "Q." The informant described the persons dealing the drugs as being Jamaican or of Jamaican descent. *Page 4 
 {¶ 3} Based upon this information, Cleveland police detective Todd Clark sought and received a warrant to search the premises from a judge of the Cuyahoga County Court of Common Pleas. The police executed the warrant at approximately 9:45 p.m. on August 31, 2005. After receiving a report of males running inside the house, the SWAT unit hit the front door with a battering ram. Officers of the SWAT unit heard footsteps in another part of the house and smelled a strong odor of marijuana. The SWAT unit cleared the first floor and continued up the back stairs to the second floor. The officers found two males hiding next to a fireplace on the second floor. The SWAT unit then cleared two rooms on the third floor where they discovered appellant and another male hiding in a crawl space. The males were ordered out of the crawl space and officers discovered a .22 caliber pistol next to where appellant had been hiding. In addition to the firearm, police found more than $2,000 on appellant.
 {¶ 4} The four males were detained and placed in police cruisers.
 {¶ 5} During the search of the house, Cleveland narcotics officers seized more than 25 pounds (11,654.87 grams) of marijuana, $22,446 in U.S. currency, numerous firearms including a shotgun, a replica AK-47 rifle, and numerous handguns, scales and other drug paraphernalia. Police also recovered the prerecorded money used by the informant for the earlier drug buy.
 {¶ 6} During the search of a green Chevy Impala parked behind the house, police found a note with a phone number and the statement, "I want my rent money now!" *Page 5 
The phone number belonged to the landlord of a property at 16413 Arcade Avenue. Police contacted the landlord and, from photographs supplied by the police, she identified appellant as one of the tenants of the Arcade apartment.
 {¶ 7} A police dog brought to the Arcade property alerted police to the presence of narcotics at the apartment door. The police entered the apartment using a key provided by the landlord and secured the premises. Officers observed a weapon in plain view and relayed this information to Detective Clark who secured a search warrant from the same judge for the Arcade apartment. During this second search, police seized a small amount of marijuana, four guns, a money counter, and $32,800 in U.S. currency.
 I {¶ 8} In his first assignment of error, appellant alleges that he was denied his constitutional right to effective assistance of counsel due to his counsel's dual representation of him and Shawn Williams, one of the other three co-defendants in the case.
 {¶ 9} In order to substantiate a claim of ineffective assistance of counsel, the appellant, upon appeal, is required to demonstrate that he was deprived of a fair trial. The appellant must affirmatively demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of the appellant's trial would have been different had defense counsel provided proper *Page 6 
representation. Strickland v. Washington (1984), 466 U.S. 668;State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 10} In State v. Gillard, 64 Ohio St.3d 304, the Ohio Supreme Court held: "Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest."
 {¶ 11} Dual representation of criminal defendants is not a per se violation of due process. Holloway v. Arkansas (1978), 435 U.S. 475,482, citing Glasser v. United States (1942), 315 U.S. 60, 92. It is possible that choosing dual representation can work to the advantage of the clients in cases when they mount a common defense against charges. Id. at 483.
 {¶ 12} Appellant did not object to the dual representation at trial. Where no objection is raised to the trial court regarding the joint representation, appellant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v.Sullivan (1980), 446 U.S. 335, 348.
 {¶ 13} The threshold inquiry is whether an actual conflict of interest existed, because the court's duty to inquire only arises if the court knew or reasonably should know that such a conflict existed. To demonstrate an actual conflict, defendants *Page 7 
must be able to point to specific instances in the record to suggest an actual conflict or impairment of their interests. State v. Terry (May 7, 1987), Cuyahoga App. No. 52072.
 {¶ 14} In the instant case, appellant contends that trial counsel's joint representation created an actual conflict of interest because appellant was unable to "point the finger at" Williams during trial. Appellant claims that it was Williams who was the responsible party for the East 93rd Street address. Appellant claims he was only responsible for the Arcade address and therefore should not have had more than 11,000 grams of marijuana found during the search of the East 93rd Street premises attributed to him because the police did not find 11,000 grams on appellant's person or at his apartment. We disagree.
 {¶ 15} Appellant was found hiding upstairs at the East 93rd Street house after fleeing from the police. A gun was found next to him and thousands of dollars was found on him. The marijuana, as well as the guns and the cash found on the premises, was attributed to all four of the defendants as being part of a large-scale commercial drug enterprise. Appellant has failed to show how hammering home the point that Williams admitted that he was the only one staying at the East 93rd Street house would have aided in appellant's defense. None of the defendants were charged based upon their residency at the East 93rd Street house. In fact, the police testified that the East 93rd Street house was not a residence at all, and that the upstairs floors where Williams was allegedly staying did not have lights or furniture. *Page 8 
 {¶ 16} Appellant has failed to demonstrate how shifting the blame to Williams based upon William's alleged residency at the house created a viable alternative defense thus creating an actual conflict of interest and dividing trial counsel's loyalties. Moreover, there is a strong presumption that trial counsel's representation falls within the wide range of reasonable professional assistance. State v. Bradley (1989),42 Ohio St.3d 136; Strickland, 466 U.S. at 690. Appellant's first assignment of error is overruled.
 II {¶ 17} In his second assignment of error, appellant contends that the court erred when it denied appellant's motion to suppress. Appellant argues that the affidavit in support of the warrant to search the East 93rd Street house was insufficient to show probable cause because it was based solely on the informant's statements to police. We disagree.
 {¶ 18} To determine the sufficiency of probable cause in an affidavit submitted to procure a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v.George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213, 238-239. *Page 9 
 {¶ 19} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. at paragraph two of the syllabus.
 {¶ 20} In the instant case, police detectives had information from an informant that large quantities of marijuana were being sold out of the East 93rd Street house. This informant was known to the police and had provided reliable information leading to arrests in the past. Detectives set-up a controlled purchase and observed the informant enter the house and then walk out of the house with ten pounds of marijuana. The informant told police that there were other persons in the house with "Q."
 {¶ 21} This court has held that a search warrant issued upon an affidavit containing an informant's first-hand observations during a controlled purchase of drugs is valid. State v Fisher (Nov. 1, 1990), Cuyahoga App. Nos. 57505 and *Page 10 
57506, unreported. A review of the record clearly reflects that based on the information provided in the affidavit, the issuing judge had a substantial basis upon which to conclude that probable cause existed to search the premises.
 {¶ 22} Appellant also claims that the search exceeded the scope of the warrant because the warrant only authorized a search of the downstairs unit of the East 93rd Street house. Appellant contends that the search of the basement and upstairs of the house and the vehicle in the driveway exceeded the scope of the warrant and was therefore illegal. Again, we disagree.
 {¶ 23} There was no mention of a green Chevy Impala or any vehicle in the wording of the search warrant. However, the search warrant specified not only the downstairs of the premises, but the "curtilage, common and storage areas and persons therein." The curtilage includes any vehicle parked in the driveway. A warrant to search a dwelling "and surrounding curtilage" includes the right to search an automobile parked on the driveway next to the residence. State v. Tewell (1983),9 Ohio App.3d 330, paragraph one of the syllabus. This court has followed the law as set forth by Tewell in State v. Hinson (Sept. 8, 1994), Cuyahoga App. No. 66259 and State v. Mihalke (Mar. 2, 1989), Cuyahoga App. No. 55047 and upheld the search of vehicles based upon the inclusion of the "curtilage" language in search warrants. Therefore, the search of the Chevy Impala parked on the premises did not exceed the scope of the warrant. *Page 11 
 {¶ 24} The warrant also failed to mention the basement of the house. However, the record reflects that the basement was one of the common areas accessible to both units by way of the stairway off the common hallway. We find that with the inclusion of the "common and storage areas" language in the search warrant, the police had authority to search the basement.
 {¶ 25} The search of the second and third floor of the premises does fall outside the scope of the search warrant. Warrantless searches are, per se, unreasonable, and therefore invalid unless they fall within one of the established exceptions. Katz v. United States (1967),389 U.S. 347. Of particular relevance here is the "hot pursuit" exception.
 {¶ 26} In Warden v. Hayden (1967), 387 U.S. 294, the Supreme Court of the United States recognized the right of police, who had probable cause to believe that an armed robber had entered a house just minutes before their arrival, to make a warrantless entry to arrest the robber and to search for weapons. Hot pursuit "need not be an extended hue and cry ` in and about [the] public streets.'" United States v. Santana (1976),427 U.S. 38, 43. Furthermore, a suspect may not evade arrest simply by fleeing pursuing officers and escaping to the sanctuary of his or her private home. Middletown v. Flinchum, 95 Ohio St.3d 43, 2002-Ohio-1625.
 {¶ 27} In the case at bar, police had information that a large scale drug enterprise was being operated out of the downstairs unit of the premises. A controlled buy within 24 hours of the warrant resulted in the purchase of ten pounds *Page 12 
of marijuana. The police informant indicated that there was more than one person in the downstairs unit. The search warrant gave police the authority to search the downstairs unit for these persons believed to be involved in the drug trafficking operation.
 {¶ 28} While executing the search warrant, a police detective observed a black male look out the front door of the house and then turn and flee through the house. The detective heard people running from the first floor up the stairs of the house. Police officers then pursued these people through the downstairs unit and up the stairs, discovering appellant and three other defendants trying to hide upstairs. The warrantless entry into the second and third floors of the house was justified by appellant and the other defendants fleeing from police. Appellant could not avoid arrest simply by outrunning police and fleeing to another apartment or floor in the house.
 {¶ 29} We find no merit to appellant's assertion that the search warrant could be expanded to include the second floor of the house, but not the third floor where appellant was found hiding from police. The officers heard people fleeing up the stairs. The officers observed money lying on the stairs, presumably dropped by persons in flight. The police officers were justified in pursuing those persons up to the third floor.
 {¶ 30} Lastly, appellant argues that the search of the Arcade address was not legal. This argument is based upon appellant's claim that the search of the Chevy *Page 13 
Impala was an illegal warrantless search, making information gained from that search subject to suppression. Since we determined that the search of the vehicle was within the scope of the search warrant, this argument has no merit.
 {¶ 31} The Arcade address was searched pursuant to a valid search warrant. We agree with the trial court that the information used to support the issuance of the warrant arose out of diligent police work. The note in the car at the first location searched led to the discovery of the second location at Arcade Avenue. The landlord of the Arcade premises was able to identify appellant as one of the apartment tenants. The police narcotics canine alerted the police to the presence of narcotics at the door of the apartment. The search of the apartment turned up more drugs, weapons, and cash.
 {¶ 32} The police sweep of the Arcade apartment prior to receiving the warrant was limited to securing the location while awaiting the warrant. A warrantless entry is justified where there is an objectively reasonable basis to believe that evidence within is in imminent danger of being lost or destroyed. State v. King, Cuyahoga App. No. 80573, 2003-Ohio-1143, citing United States v. Sangineto-Miranda (C.A.6, 1988),859 F.2d 1501, 1512. The police believed there could be people in the apartment and also more drugs and weapons. The police were concerned that with word out on the street about the raid of the East 93rd Street house the other tenant of the Arcade apartment, who was still at large, would try to remove or destroy evidence if in the apartment. *Page 14 
 {¶ 33} We agree with the trial court that there were exigent circumstances that justified the warrantless entry into the apartment to secure it while police waited for the second search warrant. Appellant's second assignment of error is overruled.
 III {¶ 34} In the third assignment of error, appellant asserts that the trial court erred when it failed to dismiss the indictment under Crim.R. 29 because there was insufficient evidence to sustain his convictions.
 {¶ 35} The standard of review on a claim of insufficiency of the evidence is, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Williams (1996), 74 Ohio St.3d 569, 576, quotingState v. Jenks (1991), 61 Ohio St.3d 259. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486. The evaluation of the weight of the evidence and credibility of witnesses are questions of fact and are left for the jury to determine.State v. Hill (1996), 75 Ohio St.3d 195, 205.
 {¶ 36} Appellant was convicted of drug possession with a firearm specification, drug trafficking, and possession of criminal tools. The essential elements of the crimes are found in the statutes. Pursuant to R.C. 2925.11, no person shall knowingly obtain, possess, or use a controlled substance. To be guilty of trafficking in drugs a person must knowingly prepare for shipment, ship, transport, deliver, *Page 15 
prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person. R.C. 2925.03. A person is guilty of possession of criminal tools if a person possesses or has under his control a substance, device, instrument, or article with the purpose to use it criminally. R.C. 2923.24. The firearm specification requires that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. R.C. 2941.141.
 {¶ 37} Appellant claims that the evidence was insufficient to support his convictions on the offenses charged because all the state actually proved was that "Q" was a drug dealer who stayed at the East 93rd Street house. Appellant asserts that the state never positively identified "Q," never identified whose phone number the police informant had contacted, failed to identify the owner of the green Impala, and failed to provide fingerprint evidence from the East 93rd Street house or the car. Again, we disagree.
 {¶ 38} In the instant case, police searched the premises at East 93rd Street and found a large quantity of marijuana, numerous guns and ammunition, thousands of dollars in money, bags, scales, and other instruments for the grinding and packaging of marijuana. The officers testified that there was a strong odor of marijuana in the house and evidence of the drug operation scattered openly throughout the premises. *Page 16 
 {¶ 39} The officers testified that appellant and the other co-defendants fled when they arrived to execute the search warrant and that appellant was found in a cubbyhole on the third floor trying to hide from police. A gun was found next to appellant and appellant had two thousand dollars in cash on him. The state argued that the house was not a residence but was a stash house where large quantities of marijuana were brought in, ground up, and repackaged for distribution. The state did not maintain that appellant and the other defendants lived at the house, only that they worked there.
 {¶ 40} A lead from a search of the car at the house led police to the Arcade apartment. The owner of the Arcade apartment identified appellant as one of the tenants of the apartment. A search of the apartment turned up more marijuana, guns, and money.
 {¶ 41} Appellant was not charged with any offenses arising from the controlled purchase of marijuana by the police informant. Therefore, any questions relating to the identity of "Q" or to his participation in the sale of marijuana to the police informant are not relevant to the instant case except as they relate to the validity of the search warrant. We have already determined that the warrant was valid.
 {¶ 42} Based on the evidence presented, and viewing it in a light most favorable to the prosecution, we find that there was sufficient evidence of appellant's participation in the drug trafficking operation to allow a rational finder of fact to find *Page 17 
appellant guilty of the offenses charged. Appellant's third assignment of error is overruled.
 IV {¶ 43} Appellant's fourth assignment of error alleges that the convictions were against the manifest weight of the evidence. While a sufficiency of the evidence review raises a question of law, a weight of the evidence review raises questions of fact. To determine whether the conviction is against the weight of the evidence, the appellate court sits as a "thirteenth juror." "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting Tibbs v. Florida (1982), 457 U.S. 31, 45. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 44} In support of its claim that appellant and the other defendants were involved in a large scale drug operation, the state presented evidence seized from two different locations including 11,719 grams of marijuana, 14 firearms, $55,246 in U.S. currency, a grinder for processing the marijuana, bags for shipping marijuana, and a digital money counter. The jury heard evidence that a police informant had purchased ten pounds of marijuana from the East 93rd
Street house within 24 hours *Page 18 
of the raid in which appellant was arrested. There was evidence that appellant fled from the first floor and was found hiding upstairs with a firearm next to him and thousands of dollars in his pocket and that appellant was identified as a tenant of the Arcade apartment where more drugs, guns, and money was found. This is not an exceptional case in which the evidence weighs heavily against appellant's convictions. Appellant's fourth assignment of error is overruled.
 {¶ 45} The judgment of the trial court is hereby affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1