[Cite as *State v. Jones*, 2016-Ohio-4565.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103495**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**SHIGALI B. JONES**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-592338-A

**BEFORE:** Blackmon, J., Jones, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 23, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino, Mancino & Mancino
75 Public Square Bldg.
Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Marc Bullard
Asst. County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Shigali B. Jones ("Jones") appeals the trial court's denial of his motion to suppress and assigns the following errors for our review:

I. Defendant was denied due process of law when the court overruled his motion to suppress and his motion for reconsideration.

II. Defendant was denied due process of law when the court ruled that the ruse used by the police and attempted change to the search warrant did not violate defendant's rights.

III. Defendant was denied due process of law when the court failed to grant a motion to suppress any statements of defendant after not being fully advised of his *Miranda* rights.

{¶2} Having reviewed the record and pertinent law, we affirm. The apposite facts follow.

{¶3} On January 13, 2015, Jones was indicted for drug-related offenses after the Cleveland Police searched his apartment and seized heroin, firearms, and other criminal tools. On May 21, 2015, the court held a hearing regarding Jones's motion to suppress the seized evidence. The court denied this motion on June 17, 2015, and it is from this denial that Jones appeals.

{¶4} At the suppression hearing, Cleveland Police Detective Lawrence Smith ("Det. Smith") testified that a confidential informant ("the CI") told him that a man named "Shag" was selling heroin on Lorain Avenue. Shag lived in a second floor apartment at 6414 St. Clair Avenue, dated a known prostitute with the last name of Williams, and drove a gray SUV. The CI told Det. Smith that Shag lived in Apartment No. 3, which is located "in the back southeast corner of the building." The CI further told Det. Smith that Shag's apartment was the one with the white door, which is the first door on the left after you go up the stairs. This was not the first

time that the police received information that a man named Shag was selling drugs on Lorain Avenue.

{¶5} The CI and Det. Smith drove to the apartment building where Shag lived, and the CI identified Shag's truck in the parking lot. Det. Smith ran the license plate number and learned that the vehicle was registered to Jones with an address of 6414 St. Clair Avenue, Apartment No. 1. The CI identified Jones's picture as the man known as Shag.

{¶6} As part of the investigation, the police conducted surveillance of Jones's apartment and observed Jones engage in a "drug transaction * * * with another individual right outside the white door, that white entry door to the building" at 6414 St. Clair Avenue. Additionally, Det. Smith arranged for a controlled buy wherein the CI would purchase heroin from Jones. The police followed Jones from his apartment to the controlled buy location on Lorain Avenue. The officers observed the controlled buy and what appeared to be another drug transaction nearby on Madison Avenue, and then followed Jones back to his apartment.

{¶7} As a result of the investigation, on December 30, 2014, Det. Smith obtained a search warrant for Jones's apartment. The premises authorized to be searched are described as follows in the warrant: "6414 St. Clair #1, * * * more fully described as a Brick apartment building with the said entrance on the east side of the building with a white door * * * just south of the overhang, through the door up the stairs unit to the left of the first landing * * * ."

{¶8} The affidavit accompanying the search warrant states in pertinent part that "the CI informed affiant that Shag resides in Apartment No. 3 which he described as having a white door. Affiant avers that Cleveland Police * * * records indicate that Shag's unit is actually Unit No. 1. Affiant avers that, during the course of the investigation, he confirmed that Shag lives in 6414 St. Clair, his unit has a white door and is the door just south of the overhang."

{¶9}     On January 1, 2015, Det. Smith executed the search warrant. Det. Smith testified that when he instructed his team on the plan of action, he told them to go up the stairs to the "first apartment on the left, the white door."  Det. Smith did not tell his team a particular apartment number.  The police searched Apartment No. 3, which, other than the unit number, corresponded to the description in the warrant.  Det. Smith testified that he had a "good faith belief" that he was searching the correct premises.

{¶10} Cleveland Police Officer Michael Billett testified that he participated in the execution of the search warrant associated with Jones's apartment.  His role was to get Jones "out of an apartment building, because he's been known to be selling drugs and have access to weapons for officer safety and citizen safety."  Officer Billet testified that he was instructed to search "the second floor apartment, first door to the left, the only white door in the apartment building."  Officer Billet was not given a particular apartment number to search; rather, he was given a description of the unit's location within the building.

{¶11} Officer Billett testified as follows: "The lady that lived downstairs let us in, informed us that [Jones] lived upstairs in one apartment, and his mother lived in the other apartment, but she didn't know which was which."  Officer Billett knocked on the white door, but nobody answered.  Officer Billett then knocked on the door of Apartment No. 1, which is also on the second floor, but it is to the right of the stairs and it has a brown door.  A woman answered the door of Apartment No. 1.  The police pointed outside to Jones's vehicle in the parking lot and asked the woman if she knew who owned the car.  The woman said no.

{¶12} The police knocked on Jones's door again, and this time he answered it. According to Officer Billet, "We told him that we were there investigating a hit-skip incident, and to ask him if he would like to step outside, inspect his vehicle for damages.  He stated that

he would." Jones was brought outside to the parking lot and the detectives arrived and handcuffed him.

## Motion to Suppress

{¶13} Jones argues in his first assigned error that the warrant was insufficient because, although "the command of the warrant only authorized the police to search '6414 St. Clair No.1,'" the police actually searched Apartment No. 3.

{¶14} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *Euclid v. Jones*, 8th Dist. Cuyahoga No. 97868, 2012-Ohio-3960. The reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Shabazz*, 8th Dist. Cuyahoga No. 97563, 2012-Ohio-3367. The application of the law to those facts is subject to de novo review. *State v. Polk*, 8th Dist. Cuyahoga No. 84361, 2005-Ohio-774, ¶ 2.

{¶15} Crim.R. 41(C) states, in part, that "[i]n the case of a search warrant, the affidavit shall * * * particularly describe the place to be searched. * * * If the judge is satisfied that probable cause exists, the judge shall issue a warrant * * * naming or describing the * * * place to be searched * * *."

{¶16} "This court * * * has held that a search warrant which incorrectly lists a street address but otherwise correctly describes the premises to be searched is valid." *State v. Youngless*, 8th Dist. Cuyahoga No. 61302, 1992 Ohio App. LEXIS 4375, 8 (Aug. 27, 1992). *See, also, United States v. Sklaroff*, 323 F.Supp. 296, 321 (S.D. Fla.1971) (courts consider "whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched * * *").

{¶17} In the case at hand, the search warrant describes with particularity the apartment within the building to be searched, including that it is the only one of the four units to have a white door. However, the warrant refers to this as Apartment No. 1, when, in fact, it is Apartment No. 3. The affidavit accompanying the warrant notes the discrepancy by stating that the CI told the police Jones lived in Apartment No. 3, but official records listed Jones's address as Apartment No. 1. The affidavit further states that: "during the course of the investigation, [the affiant] confirmed that Shag lives in 6414 St. Clair, his unit has a white door and is the door just south of the overhang."

{¶18} Jones argues that his case is factually similar to *United States v. Bershchansky*, 788 F.3d 102 (2d Cir.2015), in which a search warrant was invalidated because of an incorrect apartment number. In *Bershchansky*, the court found that the warrant "authorized the search of Apartment No. 2 and no other apartment." *Id.* at 111. "Indeed, Apartment No. 2 was the only apartment that the magistrate judge could have authorized because the warrant application submitted by [the police] referenced no other apartment and did not provide probable cause to search any other apartment." *Id.*

{¶19} Despite the scope of the warrant, the police in *Bershchansky* searched Apartment No. 1, and the court found that "they conducted a warrantless search in violation of the Fourth Amendment." *Id.* In reaching this holding, the court distinguished *Bershchansky* from other cases "in which courts have held warrants valid despite erroneous address numbers * * *, [because] other information in the warrant (or the executing officers' knowledge) strongly indicated a particular location other than the misidentified address." *Id.* The *Bershchansky* Court concluded that "the apartment number was the more salient descriptor of the location to be searched." *Id.* at 112.

{¶20} In the instant case, we find that the premises's description in the warrant — "a white door, further more as the door just south of the overhang, through the door up the stairs unit to the left of first landing" — is a better indicator of the location to be searched than the address of "6414 St. Clair #1." Additionally, Det. Smith explained in his affidavit the discrepancy between the unit numbers, and his instructions to the police officers who conducted the search included the narrative description of the unit's location rather than the unit number. Accordingly, we distinguish *Bershchansky* and find that the warrant in the case at hand was sufficient, particular, and left no reasonable probability that an incorrect unit might be searched.

{¶21} Furthermore, even if we were to find a warrantless search in this case, we find that the good faith exception to the exclusionary rule would also apply. Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). However, "the exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *State v. Wilmoth*, 22 Ohio St.3d 251, 251, 490 N.E.2d 1236 (1986).

{¶22} Det. Smith testified extensively about the apartment in which he had probable cause to believe Jones lived. He drove to the building with the CI and the CI pointed to "the southeast unit on the second floor." Through a window in the building, Det. Smith and the CI "could see a white door," which the CI identified as Jones's apartment. There is unequivocal testimony that this is, in fact, Jones's apartment, as well as the one which the police searched. Det. Smith testified that the only reason he put Apartment No. 1 on the warrant was "because

that's what OHLEG and RMS[1] stated." Asked if he told the other two police officers executing the search warrant "a particular apartment number," Det. Smith testified, "No, I [did not]. I told them the apartment with the white door * * * up the stairs, first apartment on the left * * *." Asked if he felt apartment No. 3 was "the right premises," Det. Smith testified as follows: "Yes, because of it being the white door on the upstairs left landing going up, when you got up the stairs it would be the only unit actually in this whole place that had a white door, and it was on the south side of the * * * apartment building on the second level."

{¶23} Jones additionally argues under this assigned error that "all of the alleged [drug] purchases were made on the west side of Cleveland, [but] the address of defendant is on the east side of Cleveland." The essence of Jones's argument appears to be that the warrant was issued without probable cause. The Fourth Amendment of the United States Constitution protects against unreasonable searches and provides that no warrant shall be issued "but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched * * *." *See also* Section 14, Article I, of the Ohio Constitution.

{¶24} In determining whether to issue a search warrant, the court should "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E. 2d 640 (1989). "The reviewing court then must ensure that the [issuing court] had a substantial basis for concluding

---

[1]OHLEG is an acronym for "Ohio Law Enforcement Gateway," which is a web-based informational database for law enforcement officials. Ohio Law Enforcement Gateway, http://www.ohiomemory.org/cdm/ref/collection/p267401ccp2/id/1021 (accessed Apr. 22, 2016). Det. Smith testified that RMS stands for the "Report Management System" within the Cleveland Police Department.

that probable cause existed." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 35.

**{¶25}** Jones's argument that all of the drug transactions were made on the west side of Cleveland is not accurate. The affidavit attached to the search warrant and the testimony at the suppression hearing showed that Jones and an unidentified woman engaged in a hand-to-hand transaction at his apartment complex. Additionally, the CI told the police that Jones sold drugs from his residence, among other places. Furthermore, when the police conducted surveillance of Jones during the controlled buy, he departed from his apartment to make the transaction and returned to his apartment after the transaction. We find this to be sufficient evidence of a nexus between the items to be seized and the place to be searched. *See State v. Coleman*, 8th Dist. Cuyahoga No. 91058, 2009-Ohio-1611, ¶ 50 (finding probable cause to issue a search warrant when the evidence "gave detailed information and explanation as to why individuals involved in drug dealing and trafficking often hide such evidence and contraband at their homes").

**{¶26}** Upon review, we find that the trial court had a substantial basis for concluding that probable cause existed. Accordingly, Jones's first assigned error is overruled.

### Ruse

**{¶27}** In Jones's second assigned error, he argues that the police improperly used a ruse to determine in which apartment he lived. This argument, however, is not supported by the evidence. Two police officers testified that they told Jones his car was involved in a hit-and-run to "get everybody in a calm atmosphere, and then not heighten awareness to where if there is a weapon right next to the person * * *. It's a little bit safer practice."

**{¶28}** Pursuant to R.C. 2935.12, police officers must "knock and announce" when executing a search warrant. "However, where exigent circumstances exist, the officers

conducting the search are justified in not strictly following the requirements of R.C. 2935.12."
*State v. Morrison*, 8th Dist. Cuyahoga No. 88129, 2007-Ohio-3895, ¶ 14.

{¶29} In the case at hand, it is undisputed that the police knocked and identified themselves; however, they intentionally misstated their purpose to ensure their safety. In denying Jones's motion to suppress and finding that this ruse was not contrary to law, the court quoted *State v. Quiroga*, 6th Dist. Lucas No. L-79-229, 1980 Ohio App. LEXIS 9844 (June 13, 1980): "at least one court has indicated that the use of a 'sham complaint' ruse entry did not, under the circumstances, warrant an announcement of identity and purpose by police prior to the ruse entry."

{¶30} In *Quiroga*, "the police employed a 'sham complaint,' whereby two uniformed policemen first went to appellant's door, inquiring about a fictitious distress call * * *." *Id.* at 2. The court upheld the warrant and found that the ruse was not used "to gain entry into the appellant's residence, but instead was a stall tactic, designed merely to secure the opening of appellant's front door." *Id.* at 13. *See also State v. Fornore*, 7th Dist. Columbiana No. 11CO36, 2012-Ohio-5339 (approving the use of a ruse to draw the defendant from his hotel room so the police could arrest him in the public hallway).

{¶31} Upon review of the circumstances of this case, we cannot say that the police improperly executed Jones's search warrant, and his second assigned error is overruled.

### *Miranda* **Rights**

{¶32} The Ohio Supreme Court has held that, under *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

the admissibility of any statement given during custodial interrogation of a suspect

depends on whether the police provided the suspect with four warnings: (1) that

the suspect has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

*State v. Treesh*, 90 Ohio St.3d 460, 470, 739 N.E.2d 479 (2001).

**{¶33}** In the case at hand, Det. Smith testified that, as he was leading Jones back upstairs to effectuate the search, he advised Jones as follows: "You have the right to remain silent. Anything you say can be used against you in a court of law. If you can't afford an attorney, one will be provided for you free of cost. Do you understand your *Miranda* rights?" Jones, who also testified at the suppression hearing, stated that Det. Smith never read him his *Miranda* rights.

**{¶34}** Jones makes the following argument on appeal regarding the *Miranda* warning Det. Smith allegedly gave to him: "This was an improper warning concerning defendant's rights * * *. It can be seen that defendant was not properly advised of any *Miranda* rights and any statement that he made thereafter would have to be suppressed." Jones does not argue on appeal that the police failed to advise him of his *Miranda* rights, and Jones offers no specifics or reasoning as to how his rights may have been violated. Furthermore, Jones failed to object to the *Miranda* warning in the trial court. Rather, he raises this issue for the first time on appeal.

**{¶35}** "It is axiomatic that a party cannot raise new issues for the first time on appeal. Issues are to be raised at the trial court level or they will be considered to be waived upon appeal. A reviewing court will not consider issues which the appellant failed to raise in the trial court." *Cleveland v. Cuyahoga Lorain Corp.*, 8th Dist. Cuyahoga No. 82823, 2004-Ohio-2563, ¶ 12.

{¶36} In his reply brief, Jones argues that the *Miranda* issue could not have been raised in the trial court because it "came out during the testimony of Det. Smith" at the suppression hearing. Jones further argues that his counsel did not have a transcript of that hearing until the appeal. This argument is not well taken. Jones had the opportunity to challenge the *Miranda* warning at the suppression hearing on May 21, 2015, or anytime before he pled no contest on July 14, 2015. However, he failed to do this. Furthermore, Jones's trial counsel and appellate counsel are the same. Jones's counsel was present at the suppression hearing; therefore, he did not have to wait for the suppression hearing transcript to become aware of this issue.

{¶37} Accordingly, Jones's final assigned error is overruled.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS
WITH ATTACHED SEPARATE OPINION

MARY EILEEN KILBANE, J., DISSENTING:

{¶38} I respectfully dissent. I would find that the search warrant in the instant case is insufficient because it fails to describe with particularity the premises to be searched. I would further find that the good faith exception does not apply.

{¶39} The Fourth Amendment to the United States Constitution specifies that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As this court has previously stated:

> In determining if a warrant particularly describes the place to be searched as required by the Fourth Amendment, courts consider "* * * whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant." *Commonwealth v. Rugaber* (Mass. 1976), 343 N.E.2d 865, 867; *Steele v. United States* (1925), 267 U.S. 498, 503.

*State v. Campbell*, 8th Dist. Cuyahoga No. 60178, 1992 Ohio App. LEXIS 1996, *3-4 (Apr. 16, 1992). *See also State v. Youngless*, 8th Dist. Cuyahoga No. 61302 1992 Ohio App. LEXIS 4375 (Aug. 27, 1992).

{¶40} In the instant case, there was a known discrepancy between the apartment number on the search warrant and what the officers believed was the targeted apartment. The officers, however, still proceeded with their search. Officer Billett testified, "I was told there was a discrepancy on what actually the apartment number was, but I was told [by a Cleveland police sergeant] the apartment they were going to be searching was the only apartment with a white door on the second floor." Detective Smith testified he knew that Jones came out of Apartment 3, but did not get another search warrant because he felt he had enough "because of the white door. I described it, the door when you got to the landing to the left, first doorway to the left, the

white door.   It was the only unit that could have been to the south — southeast that covered that vicinity of the apartment building."

{¶41} It is clear from the record that the officers knew they were proceeding with a search warrant lacking particularity because of the incorrect apartment number.   Instead of obtaining a new search warrant with the correct apartment number, the officers continued with their plan to get Jones out of his apartment.   They proceeded to knock on Jones's door for a second time. When he answered, the officers told Jones his vehicle was involved in a hit-skip accident and asked him to come outside.   When Jones came outside, they arrested him.

{¶42} As the Second Circuit Court of Appeals stated:

> [W]hen officers search a location other than the one that the magistrate judge intended to be searched * * * there is no need to inquire into whether the warrant's description was sufficiently particular to satisfy the Fourth Amendment in order to determine if the search violated the Constitution, because the search was conducted without the authorization of a warrant.   Such a warrantless search, absent some exception, violates the Fourth Amendment not because the description in the warrant was insufficient or inaccurate, but rather because the agents executing the search exceeded the authority that they had been granted by the magistrate judge.

*U.S. v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir.2012), citing *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("If the scope of a search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.")

**{¶43}** Based on the foregoing, I would find that the search was invalid and the good faith exception would not apply to validate the search. The Supreme Court has explicitly rejected the need for deference for mistakes made by officers in executing search warrants when, as is the case here, no sort of exigency existed at the time the officers conducted the search. *Maryland v. Garrison*, 480 U.S. 79, 87, 107 St.Ct. 1013, 94 L.E.2d 72 (1987). In the instant case, the record is devoid of any evidence suggesting exigent circumstances that would justify the officers to proceed with the incorrect search warrant. Rather, the record reveals that the officers proceeded with their plan to get Jones outside in order to arrest him.

**{¶44}** Therefore, I would find the trial court erred in denying Jones's motion to suppress.